THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LAWRENCE E. WELCH, Also Known as LAWRENCE E. WELSH, Appellant.

Fourth Department, June 27, 1962.

*Abraham Ziegler* for appellant.

*Joseph A. Ryan, District Attorney (Michael R. Canestrano* of counsel), for respondent.

BASTOW, J.   Appellant and one Whipple were jointly indicted charged with two counts of extortion in that they obtained $400 from one McLaughlin (1) by threatening to reveal to the police that the latter had committed certain burglaries and (2) through threats to do him bodily harm.

Welch was tried and convicted.   At the opening of the trial the District Attorney moved to sever as to Whipple.   Appellant's counsel claimed surprise and asked for time to consider.   Without passing upon the request the motion was granted.   It does not appear that either Whipple or his attorney was then in court.

Section 391 of the Code of Criminal Procedure provides that "[d]efendants, jointly indicted, may be tried separately or jointly in the discretion of the court."   In passing upon such a motion "The test is whether a separate trial will assist or impede the proper administration of justice and secure to the accused the right of a fair trial.   The question always presented

by such a motion is whether a jury can properly weigh the testimony upon the various issues which may arise." (*People* v. *Fisher*, 249 N. Y. 419, 424.) "The decision of the trial court rendered before the trial is dictated by a reasonable anticipation based on the facts then disclosed." (*People* v. *Snyder*, 246 N. Y. 491, 497.)

Here no facts were presented to the trial court upon which discretion might have been exercised. In enacting the statutory provision "It may be assumed that the Legislature did not intend to leave arbitrary choice to the court." (*People* v. *Snyder, supra,* p. 496.) But the decision made herein was the naked, arbitrary exercise of power in the absence, according to the record, of the jointly indicted defendant and his counsel. In the light of subsequent events there is more than a suspicion that this move on the part of the prosecutor was made as the first in a series of steps to bolster his case against appellant.

The People called McLaughlin, who testified that he had committed several burglaries and had been recently convicted. He went on to tell the manner in which appellant and Whipple assisted by one Lane (the latter two had committed burglaries with McLaughlin) had extorted $400 from him. The prosecutor then called Whipple, the codefendant. It appears that Whipple had been arraigned some two weeks before and had plead not guilty to the indictment and was represented by counsel. When questioned as a witness at this trial about the extortion Whipple, who had plead guilty to another indictment charging grand larceny, second degree, denied that he had participated in this extortion with Lane. He was then questioned by the prosecutor as to whether he was claiming his "privilege" against self incrimination or "claiming the Fifth Amendment." Finally the court told him about his "rights" and the prosecutor followed by obtaining an oral waiver of the right of the witness to refuse to testify on the grounds of self incrimination. All of this took place, according to the record, with his counsel absent.

It appeared that appellant had made no prior oral or written admissions but both Whipple and Lane had made sworn statements implicating both themselves and appellant in the plot to extort money from McLaughlin. The questioning of both witnesses followed much the same pattern. Both upon direct examination in substance denied knowledge of any facts that would implicate themselves or appellant in the extortion. The prosecutor under the guise of impeaching the witness (Code Crim. Pro., § 8-a) or refreshing his recollection proceeded to get before the jury all of the relevant contents of the affidavits made by the two

witnesses and much that was irrelevant. This was done in the form of prefacing each question with the words " Do you recall making this statement " followed by a direct quotation from the statement. To each question the witness invariably stated in one form or another that he did not remember. This manner of questioning the two witnesses covers some 52 pages in the record.

While this was going on the trial court gave no instructions to the jury as to the purpose of permitting this form of cross-examination by the prosecutor of his own witness and did not warn them of the limited use to be made by the jury of the substantive facts presented to them by the leading questions containing the contents of the statements. After the examination of each witness had been completed by both sides the prosecutor offered and the court received the affidavit previously made by each witness and used for purpose of cross-examination. When Whipple's statement was received that court said " that the statement is received only on the question of credibility of this witness and it is not being received as being any direct evidence or proof of the facts therein stated." A similar but tardy statement was made during the presentation of defendant's case as to the reason for receiving in evidence the affidavit executed by Lane. The subject was returned to in the charge but the remarks of the court centered upon the receipt of the statements and how the jury should use them. The court concluded upon the subject by remarking that the statements " were received in evidence and must be limited in their application to this case, only in so far as they might tend to assist you in determining whether or not the witness Whipple's oral testimony and the witness Lane's oral testimony as they gave it on the witness stand, is worthy of belief." It is only necessary to observe at this point that neither witness gave any oral testimony that the jury could disbelieve as the result of the impeachment. Their testimony only consisted of getting before the jury as facts the contents of the repudiated affidavits which implicated both appellant and the witnesses in the extortion plot.

The prosecutor to bolster further the truthfulness of the statements taken from the two witnesses called police officers who testified that they had taken these affidavits from Whipple and Lane. Thus, the major part of the People's case consisted of proof offered under the guise of impeaching the credibility of witnesses, who had testified to no material facts, but which proof furnished the jury with strong evidence of appellant's guilt. To cap all this it appears that the prosecutor knew that Lane doubtless would repudiate his sworn statement. Upon his cross-examination it was brought out that, in a preliminary examination of

the case against appellant before a Magistrate, Lane had been called as a witness for the People and had denied the contents of his affidavit which implicated appellant in the alleged extortion.

Whatever doubt may once have existed (cf. *People* v. *Romano,* 279 N. Y. 392, 394) it is now settled that the enactment of section 8-a of the Code of Criminal Procedure and the companion section (Civ. Prac. Act, § 343-a) in unambiguous terms "enlarge[s] the field in which impeachment of a witness by proof of prior inconsistent statements is permitted, but the statute does not in express terms or by fair implication provide that such proof may be introduced for purposes other than impeachment of a witness. * * * [P]rior self-contradictions are not to be treated as having any substantive or independent testimonial value." (*Matter of Roge* v. *Valentine,* 280 N. Y. 268, 277.)

The implementation of these statutory provisions has been further restricted in two respects. First, only the relevant and pertinent portions of the extrajudicial statement of the witness may be received, and what is obviously hearsay, conclusory and prejudicial should be excluded. (*People* v. *Cannizzaro,* 1 N Y 2d 167, 169; *People* v. *Spinello,* 303 N. Y. 193, 202.) Second, not only may such statements not be received as affirmative evidence of guilt or the facts stated but the duty rests upon the trial court so to instruct the jury. (*People* v. *Freeman,* 9 N Y 2d 600, 605; *People* v. *Shingles,* 281 App. Div. 647.)

In our opinion both of these restrictions upon the use of the statements of Whipple and Lane were here ignored. In both instances the cautionary words of the trial court were made long after the contents of the statements had been presented to the jury in the form of exhaustive questions quoting verbatim the contents of the affidavits. When instructions were forthcoming they were equated to the receipt in evidence of the affidavits. Not once during the lengthy questioning of the prosecutor was the jury told, as they should have been, that the quotations being read from the affidavits, most of which strongly incriminated appellant, were not being received as evidence of guilt and had no independent testimonial value but were received only for the purpose of impeaching the witness.

Moreover, the method of examining the two witnesses by the prosecutor was improper. After one or two unfavorable answers the District Attorney proceeded to introduce the contents of the affidavits in wholesale form by a series of questions starting with "do you remember stating in this affidavit as follows." Thus, as the record stands the relevant parts of the affidavit impeach nothing as the witness was never asked substantive

questions. The necessity therefor is inherent in the principles upon which testimonial impeachment by self-contradiction are founded. " We place his contradictory statements side by side, and, as both cannot be correct, we realize that in at least one of the two he must have spoken erroneously. Thus, we have detected him in one specific error, from which may be inferred a capacity to make other errors." (3 Wigmore, Evidence [3d ed.], § 1017.) Here, the prosecutor should have sought permission to ask leading questions upon the ground the witness was hostile and then put to the witness relevant substantive questions. Upon receiving an answer that was contradictory to the prior extrajudicial statement the portion of the latter would be admissible for the purpose of impeachment.

The vice of conducting the examination, as was done here, is that the cautionary instructions of the court, if they had been given, would have been without meaning to the jury because the quotations from the affidavits were contradictory of nothing. The result of the method adopted was that the jury of necessity considered the portions of the affidavit as read and the entire statement as received in evidence as having substantial, independent, testimonial value.

Serious error was also committed in placing before the jury irrelevant portions of the affidavits. (Cf. *People* v. *Cannizzaro,* 1 N Y 2d 167, 169, *supra.*) Under the guise of impeaching the witness, Whipple, the District Attorney placed before the jury portions of the affidavit of the witness relating conversations with McLaughlin's father, the demand of the latter for the return of the $400 extorted from McLaughlin; that the two later met when detectives apprehended the witness with a $20 bill in his hand which he was about to give to McLaughlin's mother. In addition, the statements of both witnesses, as received in evidence, contained detailed accounts of burglaries committed by McLaughlin, Whipple and Lane. One of these, according to Lane's affidavit, was committed while the trio was using appellant's automobile. Obviously, none of this would have been admissible if the witnesses had been co-operative. The admission of this evidence was highly prejudicial to appellant.

In the light of these happenings at the trial we conclude that the substantial rights of the appellant were affected by the granting of the severance that has been heretofore discussed. If reason therefor existed it was not placed on the record. It may be inferred that the reason for making the motion was to enable the People to call Whipple, the codefendant, as a witness. There is here proof that the prosecutor knew from his previous experience upon the examination before the Magistrate that the

witness, Lane, would refuse to testify. In view of the other errors requiring a new trial it is unnecessary to reach or pass upon the question as to whether or not a prosecutor may put a witness on the stand, from whom he has a sworn statement, knowing that the witness will repudiate the former writing, or refuse to testify, and then use the contents of the affidavit under the guise of impeaching the credibility of the witness. (Cf. *People* v. *Schwarz*, 10 A D 2d 17; *People* v. *Lowry*, 8 A D 2d 956.)

We find that the substantial rights of the appellant have been affected and the power conferred by section 542 of the Code of Criminal Procedure should not be exercised. The judgment appealed from should be reversed on the law and the facts and in the interests of justice and a new trial ordered.

WILLIAMS, P. J., GOLDMAN, HALPERN and HENRY, JJ., concur.

Judgment of conviction unanimously reversed on the law and facts and in the interests of justice and a new trial granted.