**Curtis TAYLOR, Plaintiff-Appellant,**

v.

**The BALTIMORE & OHIO RAILROAD CO., Defendant-Appellee.**

**No. 304, Docket 28175.**

United States Court of Appeals Second Circuit.

Argued Jan. 22, 1965.

Decided April 2, 1965.

Edward J. Bloustein, New York City (Fuchsberg & Fuchsberg, Jacob D. Fuchsberg, New York City, of counsel), for plaintiff-appellant.

Eugene Z. DuBose, New York City (Alexander & Green, Donald M. Dunn and Alfred C. Moran, New York City, of counsel), for defendant-appellee.

Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.

FRIENDLY, Circuit Judge:

Curtis Taylor was a freight handler employed by The Baltimore & Ohio Railroad Co. (B & O) on a North River pier. On the night of December 24, 1956, he was helping unload a car float by driving a tractor hauling six "flat trucks" from the float over a gangplank to the pier, and back to the float for reloading. On one of these return journeys, Taylor suffered a back injury, as recounted later in this opinion. On December 26, after he had returned to work, the B & O reported the incident to the Office of the New York Deputy Commissioner of the U. S. Department of Labor administering the Longshoremen's and Harbor Workers' Compensation Act. The report, on a form prescribed by the Department and signed by a freight agent, described the accident as follows:

> "He pulled a line of empty trailer trucks up the plank when his tractor stalled halfway up. Another operator pushed the line from behind with his tractor up the plank. In doing so, Taylor was jarred."

On November 20, 1957, Taylor brought this action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, against the B & O in the District Court for the Eastern District of New York. The case was not tried until February, 1963. Taylor's testimony was that a fellow employee, Green, had negligently driven a tractor against the last of Taylor's flat trucks while Taylor's tractor and string of trucks were still on the pier bulkhead. Green testified that he saw Taylor's tractor stopped halfway up the gangplank,

with a rear wheel slipping, with some flats on the plank and some on the pier bulkhead, and that as Green was maneuvering to give the caravan a push, his own tractor hit Taylor's last flat truck.

The judge charged that the first thing the jury must determine was where Taylor was injured, and that if they found he was then on the gangplank, they must render a verdict for the defendant.[1] Taylor's counsel objected only to the judge's instructing the jury to consider this issue first—not to the legal principle charged. See Interlake S. S. Co. v. Nielsen, 338 F. 2d 879 (6 Cir. 1964); Caldaro v. Baltimore & O. R. R., 166 F.Supp. 833 (E.D. N.Y.1956).

After deliberation the jury announced through the foreman, "We, the Jury, find the plaintiff to have been on the gangplank." The judge had this restated and recorded as a general verdict for the defendant. All of Taylor's contentions in this court concern the exclusion or admission of evidence bearing on the place of the injury.

(1) Taylor's lawyer had interviewed Alfred Smith, a fellow employee on the pier, and had taken a signed statement from him, on November 2, 1957—more than ten months after the accident and a few weeks before suit was brought. In the statement Smith recounted that, on the night of the accident, he had seen Taylor pulling some empty flats heading for the float, and that "as he [Taylor] approached the gangplank, he stopped on the bulkhead to change to a low gear," at which time another tractor crashed into the last flat truck, and that "it looked like a pretty hard bang." When, having been called as a witness by Taylor at the trial, he was asked whether he had seen or heard something happen that involved Taylor, he answered, "Well, I heard something. That's all." The judge gave Taylor's counsel full opportunity to use the prior statement to refresh Smith's recollection by having Smith reread it to himself but refused to receive it in evidence as affecting Smith's credibility.

The evidentiary status of a prior inconsistent statement of a witness on the stand has been much discussed, particularly since Dean Wigmore's celebrated swerve to the admittedly unorthodox position that the statement should be received as substantive evidence since, by the witness' availability for cross-examination, "the whole purpose of the Hearsay rule has already been satisfied." 3 Wigmore, Evidence § 1018, at 687–88 (3d ed. 1940). At the last term we followed that view to the extent of upholding the reception as substantive evidence of inconsistent testimony of the witness at a former trial and before a grand jury (and also prior identifications vouched for in such testimony). United States v. De Sisto, 329 F.2d 929 (2 Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964). We went no further because we entertained doubts both as to whether we could, see Bridges v. Wixon, 326 U.S. 135, 153–154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), and as to whether, having in mind the ease of putting thoughts into the minds of prospective witnesses, we should. At the trial in this case, Taylor's counsel did not seek, at least in form, to offer Smith's statement as substantive testimony; he offered it merely for impeachment.

■ If Smith had testified that he had seen the accident and that Taylor had been on the gangplank, Taylor would indeed have been entitled to have the prior statement received to impeach the credibility of his turncoat witness by the express command of N.Y.Civ.Prac.Act § 343–a, now CPLR Rule 4514, see Puggioni v. Luckenbach S. S. Co., 286 F.2d 340, 343 (2 Cir. 1961), and such reception would also have been proper under fed-

---

1. The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, covers disability or death of an "employee" resulting "from an injury occurring upon the navigable waters of the United States (including any dry dock),"

33 U.S.C. § 903. The liability to pay compensation for any such injury, 33 U.S.C. § 904, is "exclusive and in place of all other liability" of the employer, 33 U.S.C. § 905.

eral decisional law apart from the New York statute, see United States v. Allied Stevedoring Corp., 241 F.2d 925, 932–933 (2 Cir.), cert. denied, 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143 (1957). The distinction correctly made by the judge was that here Smith had testified to nothing damaging to Taylor's case; he had simply disclaimed any relevant testimonial knowledge. The authorities are nearly unanimous that in such cases a prior inconsistent statement of facts favorable to the proponent of the witness may not be used to impeach. See 3 Wigmore, supra, § 1043, citing many cases; McCormick, Evidence § 36, at 67, and cases cited in n. 7 (1954); Note, 62 Yale L.J. 650, 653–54 (1953); Kuhn v. United States, 24 F.2d 910, 913 (9 Cir.), modified on other grounds on rehearing, 26 F.2d 463, cert. denied, Lee v. United States, 278 U.S. 605, 49 S.Ct. 11, 73 L.Ed. 533 (1928); Westinghouse Elec. Corp. v. Wray Equip. Corp., 286 F.2d 491, 493 (1 Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).[2] "The maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised"; "where the witness gives no testimony injurious to the party calling him, but only fails to render the assistance which was expected by professing to be without knowledge on the subject, there is no reason or basis for impeachment under the rule." Kuhn v. United States, supra, 24 F.2d at 913. In the absence of New York authority opposed to the consensus —and none has been cited to us—we are unwilling to construe the general language of Civ.Prac.Act § 343–a as commanding departure from such a well-settled principle.[3]

We realize that in strict logic the analysis quoted from the Kuhn opinion is not quite the whole story. If a witness who once professed testimonial knowledge favorable to the proponent denies this knowledge on the stand, the mind asks what caused the change and recognizes that wrongful pressure from the opponent might be the explanation. Intimidation of the witness would, of course, be independently relevant, and proof of this admissible. 2 Wigmore, supra, § 278. But mere failure of a witness to repeat a prior statement helpful to the proponent gives an exceedingly slight basis for drawing the inference. The first statement itself may have been wrong and the oath or the prospect of cross-examination may have led the witness spontaneously to correct it; if the opponent had spoken to the witness, he can as well have been asking information as giving directions; or the witness may simply have forgotten—a fair possibility here, when over five years had intervened between the accident and the trial. The basis for an inference of intimidation is extremely weak as against the danger that if the statement is admitted, the jury will use it substantively regardless of what the judge may say. See McCormick, supra, § 39, at 77. "When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." Shepard v. United States, 290 U.S. 96, 104, 54 S.Ct. 22, 26, 78 L.Ed. 196 (1933). Moreover, even if we should assume it was proper for the jury to know that Smith had once said something favorable to plaintiff, they were hardly so obtuse as not to get the point from an examination, stretching over nearly four typed pages, in which Taylor's counsel confronted Smith with his written state-

2. A contrary view was taken, under somewhat special circumstances and over a strong dissent, in People v. Le Beau, 39 Cal.2d 146, 245 P.2d 302 (1952)—a decision viewed with some disfavor in Note, 62 Yale L.J. 650, 657 (1953).

3. The issue was squarely presented in two recent criminal cases, People v. Freeman, 9 N.Y.2d 600, 217 N.Y.S.2d 5, 176 N.E.2d 39 (1961), and People v. Welch, 16 A.D.2d 554, 229 N.Y.S.2d 909 (1962),

in the context of N.Y.Code Crim.Proc. § 8–a, a word-for-word counterpart to § 343–a. However, Freeman held the impeaching evidence improper on different grounds; and Welch, although the opinion frowned upon "proof offered under the guise of impeaching the credibility of witnesses, who had testified to no material facts," is not wholly conclusive for other reasons.

ment; asked repeatedly whether he had understood it; inquired whether it refreshed his recollection of where Taylor was when he heard the noise; and asked, and received affirmative answers, as to whether Smith's supervisors were in court.

■■ (2) The B & O called Dr. Sigmund Falk, to whom it had sent Taylor for an examination on January 8, 1957. The doctor testified that, under his office procedure, his secretary would first record a history on a card, and the patient would then bring this to the doctor who "check[s] on it * * * by talking to the patient." One item on the card, which was received in evidence over objection, calls for the place of the injury; this was filled out "Pier 66, gangplank, North River, N. Y." Plaintiff argues that reception of the card as evidence on this issue contravenes the holding of a closely divided court in Williams v. Alexander, 309 N.Y. 283, 287, 129 N.E.2d 417 (1955), that the New York business records statute, then Civ.Prac.Act § 374–2, now CPLR Rule 4518, does not permit the introduction of a statement in medical records of "acts or occurrences * * not germane to diagnosis or treatment * * *." Although this settles the issue under the New York statute and is persuasive on the construction of the similar federal act, 28 U.S.C. § 1732, it is not conclusive as to the latter. Cf. Tucker v. Loew's Theatre & Realty Corp., 149 F.2d 677, 680 (2 Cir.1945). We do not consider it necessary to decide that issue. For Dr. Falk's testimony can fairly be read as saying that he checked this item with Taylor; the card was therefore receivable as an admission by the latter. See 4 Wigmore, supra, § 1073.

(3) Taylor's final, and most serious, complaint relates to the reception of the report of the accident made to the Department of Labor and of the duplicate of this kept as a record by the B & O. His contention is two-pronged; he asserts (a) that the records were not within the federal business records statute, 28 U.S.C. § 1732,[4] and (b) that in any event their reception was barred by 33 U.S.C. § 930(c).

■ (a) The Longshoremen's and Harbor Workers' Compensation Act requires the employer to "keep a record in respect of any injury to an employee," 33 U.S.C. § 929, and to make a prompt report to the Secretary of Labor, 33 U.S.C. § 930. The report is to contain four specified items and "such other information as the Secretary may require." The Department of Labor has prescribed a form of report, 20 C.F.R. §§ 01.13, 31.3 (1961), of which one item is "Place where injury occurred" and another is "Describe in full how alleged accident occurred, or how employee was exposed to alleged hazard." The B & O answered the former item "Float No. 183 on north side of Pier 66 NR" and the latter as quoted earlier in this opinion. It kept a copy of the report as its own record under § 929.

It would seem difficult, as an original question, to see basis for doubting that the report was a "writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transactions, occurrence, or event," 28 U.S.C. § 1732, made in the regular course of business. It would ill become a court to say that the regular making of reports required by law is not the regular course of business. In United States v. New York Foreign Trade Zone Operators, 304 F.2d 792 (2 Cir. 1962), we held that the federal business records statute applied to a

4. The records are of the sort that would be admissible under the New York business records act, Bishin v. New York Cent. R. R., 20 A.D.2d 921, 249 N.Y.S. 2d 778 (1964), but for the possible bar of Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (1930), requiring that the entrant have witnessed the event or have obtained the information from those under a "duty" to transmit it. See Cox v. State, 3 N.Y.2d 693, 171 N.Y.S.2d 818, 148 N.E.2d 879 (1958). Compare Pekelis v. Transcontinental & W. Air, Inc., 187 F.2d 122, 130–131, 23 A.L.R.2d 1349 (2 Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951), interpreting the federal act.

very similar type of report directed by the Federal Employees' Compensation Act, 5 U.S.C. § 774, to be made by the employer's superior. But Taylor contends that a similar conclusion is here precluded by Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), and seeks to distinguish the Foreign Trade Zone case on the basis that the report there was not "self-serving" whereas here it was.

The legal principle enunciated in Palmer v. Hoffman was that "the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act." 318 U.S. at 113, 63 S.Ct. at 480. That is not at all the same as saying that a record made in the regular course of business is not to be considered as such because it happens to embody an employee's version of an accident. This court has never regarded Palmer v. Hoffman as going so far, Lopoczyk v. Chester A. Poling, Inc., 152 F.2d 457, 460 n. 4 (2 Cir. 1945); Pekelis v. Transcontinental & W. Air, Inc., 187 F. 2d 122 (2 Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951); Naylor v. Isthmian S. S. Co., 187 F.2d 538 (2 Cir. 1951); Terrasi v. South Atl. Lines, 226 F.2d 823 (2 Cir. 1955), cert. denied, 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 855 (1956), and the Foreign Trade Zone case expressly held admissible an accident report required by statute despite Palmer v. Hoffman. See, accord, Bishin v. New York Cent. R. R., 20 A.D. 2d 921, 249 N.Y.S.2d 778 (1964).

We have likewise not interpreted the Supreme Court's opinion as barring such a record simply because it turns out to work in favor of the entrant's employer —a factor which the opinion in no way stressed. Speaking through Judge A. N. Hand, this Court sustained the admissibility of such a record in Naylor v.

Isthmian S. S. Co., supra, as it did through Judge Clark in Terrasi v. South Atl. Lines, supra. We did this again in the Foreign Trade Zone case, see, accord, Bishin v. New York Cent. R. R., supra. The statement in the Foreign Trade Zone case, as in this, had elements of both disadvantage and advantage to the entrant's employer. Both statements were admissions of liability for compensation. The report in Foreign Trade Zone afforded a basis for recovery by the employer against a third person, 5 U.S.C. § 776, whereas the statement here afforded a basis for the employer's defending against suit under the FELA. The cases are similar also in that each entrant, unlike the engineer in Palmer v. Hoffman, had no personal involvement in the accident and, in all likelihood, no awareness of the manner in which his entry might work to the employer's advantage. The report here was made when, so far as the record shows, no one thought Taylor had suffered any serious injury, and it can hardly be assumed that a freight agent would appreciate the witty diversity whereby the difference of a few feet in the place of an employee's injury would result in the imposition of a distinct legal regime. The B & O freight agent's report that Taylor's accident occurred on the gangplank, making the B & O thus liable to pay compensation under the Longshoremen's Act, is a far cry from Judge Frank's description of Palmer as a case "where the person who makes the memorandum or report knows at the time of making it that he is very likely, in a probable law suit relating to that accident, to be charged with wrongdoing as a participant in the accident, so that he is almost certain, when making the memorandum or report, to be sharply affected by a desire to exculpate himself and to relieve himself or his employer of liability," 129 F.2d 976, 991 (2 Cir. 1942) (italics omitted). See Judge Clark's concurring opinion in the Foreign Trade Zone case, supra, 304 F.2d at 799.[5]

---

5. We do not regard Shenker v. United States, 322 F.2d 622, 627–628 (2 Cir.), cert. denied, American Stevedores v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1963), as calling for reversal here. There the district court

(b) Taylor's second prong, first revealed on appeal, is that 33 U.S.C. § 930 (c) says that "[a]ny report provided for in subdivision (a) or (b) of this section shall not be evidence of any fact stated in such report in any proceeding in respect of such injury or death on account of which the report is made." The B & O answers that "any proceeding" refers only to proceedings under the Longshoremen's Act—which we doubt to be so; that 33 U.S.C. § 929 has no provision corresponding to § 930(c) as to use of the company's own record, so that any error in admitting the identical report sent to the Department of Labor under § 930 was harmless; and that Taylor's failure to bring the point to the attention of the trial court precludes his raising it now.

The source of provisions like § 930(c) seems to have been the Act of May 6, 1910, 36 Stat. 350, "[r]equiring common carriers engaged in interstate and foreign commerce to make full reports of all accidents to the Interstate Commerce Commission, and authorizing investigation thereof by said commission"; § 4 of that act, repeated by the same Congress in the Boiler Inspection Act, § 8, 36 Stat. 916 (1911), said that "[n]either said report nor any report of said investigation nor any part thereof shall be admitted as evidence or used for any purpose in any suit or action for damages growing out of any matter mentioned in said report or investigation." It is rather clear that the purpose of these provisions, enacted a quarter of a century before the federal business records statute, was to encourage full reporting and investigation by freeing the carrier from the risk that its statements could be used as admissions, see Morgan, The Law of Evidence, 1941–1945, 59 Harv.L.Rev. 481, 567 (1946), and that, despite the breadth of the language, Congress was not thinking of the case, which could hardly have been envisioned under the then state of the law, where the carrier would attempt to use statements in the report in its favor.

This would help explain the omission of an exclusory provision in § 929 of the 1927 Longshoremen's Act, similar to that in § 930(c); and although a dictum in Palmer v. Hoffman, supra, 318 U.S. at 115, 63 S.Ct. at 481, would rule out any argument that § 930(c) applies only to the use of reports against the employer, there may be some merit in the B & O's contention as to the use of the copy which the company chose to retain as its record under § 929. Cf. St. Regis Paper Co. v. United States, 368 U.S. 208, 218–219, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

■ We find it unnecessary to decide this because we uphold the contention that the objection as to the effect of § 930(c) came too late when first made on appeal. The objection pressed below, and debated at great length, was whether the records were within 28 U.S.C. § 1732; no reference whatever was made to the exclusory effect of 33 U.S.C. § 930(c). "A specific objection *overruled* will be effective to the extent of the grounds specified, and no further. An objection *overruled*, therefore, naming a ground which is untenable, cannot be availed of because there was *another and tenable ground which might have been named* but was not." 1 Wigmore, supra, § 18, at 339–40. The reasons for this are plain. To allow an objection to evidence that should have been made and might well have been sustained at trial to be advanced for the first time on appeal produces a trial that would otherwise have been avoided; in these days of crowded calendars and congested courts, such a luxury can be permitted only in rare cases when necessary to prevent a clear miscarriage of justice. We have no conviction that such is the case here; we think rather that the jury showed usual good sense in regarding Taylor's claim concerning the *locus* of the injury as an afterthought. Furthermore, the party offering the evidence might have decided to forego it and rely on other testimony if he had been apprised of the added basis

had excluded the log entry. We held this was not such an abuse of discretion as to require reversal. The decision could

hardly have been intended to overrule, *sub silentio*, this court's earlier decisions in Naylor and Terrasi.

of vulnerability. See Williams v. Wilcox, 8 A. & E. 314, 337, 112 Eng.Rep. 857, 865 (K.B.1838). Whether or not Wigmore's principle is as wise as we think it to be, it is thoroughly established in federal law. Norwood v. Great Am. Indem. Co., 146 F.2d 797, 800 (3 Cir. 1944); United States v. Miller, 316 F.2d 81, 84 (6 Cir.), cert. denied, 375 U.S. 935, 84 S.Ct. 335, 11 L.Ed.2d 267 (1963); United States v. Sansone, 231 F.2d 887, 891 (2 Cir.), cert. denied, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500 (1956).

Affirmed.