CRAWFORD, Judge
(concurring in part and dissenting in part):
Although I concur with the majority on Issues I and II, I respectfully dissent on *454 Issue III. While I concur with Judge Erd-mann’s conclusion that the military judge did not abuse his discretion by admitting the evidence of uncharged misconduct, I write separately to emphasize the important jurisprudential considerations underlying this Court’s test in United States v. Reynolds, 29 M.J. 105 (C.M.A.1989).
FACTS
The relevant facts in this case are as follows. A key Government witness, Senior Airman (SrA) Daugherty, produced a handwritten statement to Office of Special Investigations (OSI) implicating Appellant with regards to illegal drug use and possession. Four-and-a-half months later, SrA Daugherty was personally approached in his quarters by Appellant. On the following day, it was discovered by Appellant’s defense counsel that Daugherty was suffering from memory loss and could no longer attest to the accuracy of his original confession. In a new affidavit prepared by defense counsel, SrA Daugherty recanted, stating: “It was likely that [Appellant] never did go with me” to purchase drugs. In response, the Government sought to introduce evidence that Appellant influenced the witness — primarily that Appellant met with him just prior to the claimed memory loss. Ultimately, the judge admitted this evidence pursuant to Military Rule of Evidence (M.R.E.) 404(b), which is exactly the same as Federal Rule of Evidence (Fed.R.Evid.) 404(b). The Government argued to the members that Appellant obstructed justice by influencing SrA Daugherty, and that such acts were indicative of Appellant’s consciousness of guilt. Appellant was subsequently convicted of drug use and possession. The issue at hand questions the military judge’s decision to admit evidence of Appellant’s undue influence on the witness.
DISCUSSION
When determining admissibility, the military judge correctly applied the test set forth in Reynolds, which requires, in this case, that (1) the evidence reasonably supports a finding that Appellant committed prior crimes, wrongs, or acts, (2) that the evidence increases the likelihood that Appellant is guilty of the drug offenses brought against him, and (3) the probative value of the evidence is not substantially outweighed by unfair prejudice.
Our Reynolds opinion was decided after Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), but interestingly enough, did not directly cite Huddleston.
Huddleston provides that “Rule 404(b) ... evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.” Id. at 689, 108 S.Ct. 1496. This is the first prong of our Reynolds test.
The second prong of Reynolds does not deviate from Huddleston. “The threshold inquiry ... is whether that evidence is probative of a material issue other than character.” Id. at 686, 108 S.Ct. 1496. The Court goes on to recognize that Fed.R.Evid. 401 and 402 (like M.R.E. 401 and 402) “establish the broad principle that relevant evidence— evidence that makes the existence of any fact at issue more or less probable — is admissible unless the Rules provide otherwise.” Id. at 687, 108 S.Ct. 1496.
The third prong of Reynolds is likewise discussed in Huddleston. In its discussion of the danger of undue prejudice, the Supreme Court stated, “The House made clear that the version of Rule 404(b) which became law was intended to ‘plac[e] greater emphasis on admissibility than did the final Court version.’” Id. at 688, 108 S.Ct. 1496. The Court continued:
The Senate echoed this theme: “[T]he use of the discretionary word ‘may’ with respect to the admissibility of evidence of crimes, wrongs, or other acts is not intended to confer any arbitrary discretion on the trial judge.” S.Rep. No. 93-1277, ... at 24. Thus, Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence.
Id. at 688-89, 108 S.Ct. 1496.
When using the Reynolds test, it is necessary to recognize the difference between the *455 factual relevance prong (Prong I) and the legal relevance prong (Prong III). While Prong I is meant to determine the sufficiency of the evidence, Prong III is meant to weigh the evidence’s potential unfair prejudice. It is easy to confuse the sufficiency of the evidence (Prong I) with the evidence’s probative value (Prong III). It is therefore necessary to reconsider the Reynolds test in full to lend perspective to the majority opinion.
Beginning with Prong I of the Reynolds test, the meeting between Appellant and SrA Daugherty strongly suggests that Appellant unduly influenced him to recant his original statement. Soon after their meeting, the witness forgot the details of a hand-written statement, even while he and others were being prosecuted based on the statement’s details. Not only did the witness forget a set of events that were seemingly central and fresh in his mind, but this memory loss was also discovered by defense counsel only a day after Appellant visited SrA Daugherty. Arguing that such facts are insufficient to support a finding that Appellant influenced SrA Daugherty to recant tests the bounds of coincidence when one considers the details of the events, the timing of the visit, and the subsequent lapse of memory.
Nevertheless, the majority has misgivings about the relevance of this evidence. The majority posits an alternate explanation for the memory loss, noting that the meeting might have induced SrA Daugherty to recant “due to feelings of remorse over betraying a friend.” United States v. Rhodes, 61 M.J. at 452 (C.A.A.F.2005). Aside from being unlikely, such alternatives are irrelevant because “the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply ... decides whether the jury could reasonably find the conditional fact” — here, that Appellant prompted the witness to claim memory loss. Huddleston, 485 U.S. at 690, 108 S.Ct. 1496 (emphasis added); see also United States v. Mirandes-Gonzalez, 26 M.J. 411, 413-14 (C.M.A.1988). Indeed, M.R.E. 104(b) notes that “[wjhen the relevancy of evidence depends upon the fulfillment of a condition of fact, the military judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.” Emphasis added. The meeting between Appellant and the witness is a strong circumstantial indication of undue influence, and is clearly relevant under this standard. Weighing the evidence against alternative explanations and counter-evidence is inappropriate because such is the role of the members. Defense counsel’s arguments and use of contrary testimony were simply unpersuasive, and it is not the place of this Court to second-guess the members’ findings.
Curiously, the majority uses a lengthy quotation from Taylor v. Baltimore & Ohio R.R. Co., 344 F.2d 281 (2d Cir.1965), to argue that the evidence is too speculative to be admitted. In Taylor, a civil action under the Federal Employer’s Liability Act, a witness had originally provided a statement in a way that benefited the plaintiff. At trial five years later, this same witness could not recall his original statement — a loss in memory that critically damaged the plaintiff’s case. In the opinion, Judge Friendly discussed the plaintiffs potential argument that the defendant tampered with the witness:
[I]f the opponent had spoken to the witness, he can as well have been asking information as giving directions; or the witness may simply have forgotten — a fair possibility here, when over five years had intervened between the accident and the trial. The basis for an inference of intimidation is extremely weak as against the danger that if the statement is admitted, the jury will use it substantively regardless of what the judge may say.
Id. at 284. Not only are the facts in Taylor distinguishable from the present case, its holding also conflicts with the majority decision.
First, aside from being a Second Circuit civil case from the 1960s, the facts in Taylor are critically different. In Taylor, the memory loss occurred over a period of five years, a fact omitted by ellipsis from the majority’s quote. 61 M.J. at 452. Furthermore, Judge Friendly’s commentary did not assume the present situation, where a meeting occurs *456 immediately prior to discovering the witness’s memory loss. The present case is not diluted by a five-year time span, during which facts could be legitimately forgotten, and an opportunity to influence the witness may not present itself. On the contrary, Appellant approached SrA Daugherty only four-and-a-half months after the original written statement was made, and on the very next day Daugherty recanted, claiming memory loss. The majority’s assertion, that “a change in a witness’s recollection is, by itself, insufficient,” 61 M.J. at 452, disregards the highly coincidental nature of the present case — a scenario that Judge Friendly wisely anticipated by limiting the Taylor decision to its particular facts. Finally, Judge Friendly’s opinion deals with a fundamentally different question: whether the witness’s original statement should be introduced at all. This Court has no qualms with the introduction of SrA Daugherty’s original confession to OSI.
Second, the majority opinion is inconsistent with Taylor. Under its set of facts, the court in Taylor would have found evidence of witness tampering to be completely inadmissible due to the risk of confusing the jury. In contrast, the majority creatively deems such evidence admissible while also condemning its use in the Government’s arguments and the jury instruction. While the meeting was “important background information” that helps explain SrA Daugherty’s loss of memory, they would not allow the Government or the jury to consider the notion that Appellant actually caused the recantation. Hence, the majority would admit the same evidence described in Taylor but require that nobody mention its obvious inference, thereby disregarding Judge Friendly’s caution that “the jury will use [the evidence] substantively regardless of what the judge may say.” Id. at 284. Considering its distinguishing characteristics and apparent misapplication, Taylor sheds but a glimmer of guiding light on the case at hand and only illustrates an extreme instance where no circumstantial evidence existed from which to infer undue witness influence.
In sum, the first prong of the Reynolds test is satisfied because evidence of a highly coincidental meeting between Appellant and SrA Daugherty is relevant, and reasonably supports the finding that Appellant influenced the recantation.
While not actively disputed, the second prong of the Reynolds test requires that the evidence increase the likelihood that Appellant is guilty of the drug offenses brought against him. Here, the evidence indicates that Appellant was aware of his wrongdoings and was attempting to influence a witness to reach a favorable conclusion at trial. Appellant’s consciousness of guilt would make it more likely that he committed the alleged drug offenses, and the second prong is thereby satisfied.
The third prong of the Reynolds test requires that evidence be excluded if it is substantially more prejudicial than probative. See M.R.E. 403. First, the probative value of the meeting between Appellant and the witness is very high given the nature of this case. Generally, evidence of consciousness of guilt is very probative and “second only to a confession in terms of probative value.” United States v. Meling, 47 F.3d 1546, 1557 (9th Cir.1995). In this ease, such evidence is critically important to the Government. As the majority notes, “the Government’s case concerning the psilocyn mushroom offenses rested almost solely on SrA Daugherty’s pretrial statement.” 61 M.J. at 453. Given the convenient and coincidental nature of the memory loss, evidence suggesting that Appellant spoiled SrA Daugherty’s statement is very probative and central to the Government’s ability to prove guilt.
Second, the risk of unfair prejudice is slight. To analyze prejudice, this Court must determine to what degree the evidence may mislead, interfere with, or confuse the members in assessing the principal charges. See M.R.E. 403; United States v. Kinman, 25 M.J. 99 (C.M.A.1987) (applying M.R.E. 403 to introduction of uncharged misconduct evidence). See also Taylor, 344 F.2d at 284. Acts showing consciousness of guilt are unique from other forms of uncharged misconduct in that they almost always directly relate to the charges at hand — which may explain why it is difficult to articulate any *457 true unfair prejudice in the present case. For example, there is little risk that the members would believe that Appellant used or possessed drugs simply due to a general propensity to obstruct justice. Rather, they would believe that Appellant is guilty of these offenses because influencing SrA Daugherty to recant his original statement is directly indicative of guilt in this particular case. The introduction of this evidence has little collateral or prejudicial effect. Furthermore, any remaining risk of unfair prejudice was tempered by the military judge’s limiting instruction, stating that “there is nothing improper per se in an accused meeting with potential witnesses and arranging meetings for them with his lawyer.”
In applying the third prong of the Reynolds test, the majority asserts that the prejudicial value of the meeting substantially outweighs its probative value pursuant to M.R.E. 403. M.R.E. 403 is a rule of evidence, not a rule of argument. It speaks to the admissibility of the evidence alone. The majority applies the third prong against the “erroneous use of this evidence” instead of its admission. 61 M.J. at 453 (emphasis added). It goes without saying that the use of damaging evidence will be extremely prejudicial to the defendant’s liberty interest, “as is most good prosecution evidence.” Reynolds, 29 M.J. at 109. This does not make the evidence itself unfairly prejudicial or inadmissible. In the present case, the meeting between Appellant and SrA Daugherty on the day before his memory loss directly implies that Appellant influenced him. This evidence did not suddenly transform when the Government argued this theory or when the military judge used it in an instruction.
While the meeting made Appellant appear more guilty in the instant case — as is the purpose of such evidence — this is not an example of unfair prejudice. The evidence’s probative value is not mitigated by the testimony of SrA Daugherty “that Appellant had nothing to do with his memory loss.” 61 M.J. at 452. The testimony must be weighed against his prior statements and in the context of his conversation with Appellant. SrA Daugherty’s testimony is an insufficient basis for a legal conclusion of inadmissibility because the evaluation of this conflicting evidence is left to members. Thus, the third prong of the Reynolds test is more than satisfied, as the probative value of the evidence outweighs any potential prejudice.
I therefore agree that the military judge’s application of the Reynolds-Huddleston test was not an abuse of discretion. “A military judge’s ruling on admissibility of evidence ... will not be overturned on appeal ‘absent a clear abuse of discretion.’ ” United States v. Johnson, 46 M.J. 8, 10 (C.A.A.F.1997) (quoting United States v. Redmond, 21 M.J. 319, 326 (C.M.A.1986)). This Court’s split on this issue indicates that reasonable minds can disagree on whether to allow such evidence under these circumstances. Even so, simple disagreement is not sufficient to overturn the military judge’s decision:
[A]n abuse of discretion involves far more than a difference in judicial opinion ... The challenged action must ... be found to be “arbitrary, fanciful, clearly unreasonable,” or “clearly erroneous” in order to be invalidated on appeal. If, on the other hand, reasonable [minds] could differ as to its propriety, then it cannot be said that the trial judge abused his discretion.
United States v. Glenn, 473 F.2d 191, 196 (D.C.Cir.1972) (internal citations omitted). Accord United States v. Travers, 25 M.J. 61, 62-63 (C.M.A.1987) (citing Glenn, 473 F.2d at 196). This Court has recently stated that an abuse of discretion occurs only when findings of fact are clearly erroneous, when incorrect law is applied, or when the law is applied incorrectly. United States v. Roberts, 59 M.J. 323, 326 (C.A.A.F.2004). Here, the military judge’s decision is not an abuse of discretion because the correct legal test was applied against a set of undisputed facts. The military judge concluded that “the members could reasonably find that the uncharged misconduct occurred” based on the circumstantial evidence, that the evidence increased the probability of Appellant’s guilt, that the probative value was high given the coincidental nature of the memory loss, and that any risk of prejudice could be cured by *458 instruction. While the conclusion drawn by the military judge may differ from that of the majority, this is not a basis for overturning the result.
I would therefore affirm the judgment of the United States Air Force Court of Criminal Appeals.