UNITED STATES, Appellee

v.

Bradley K. RHODES, Staff Sergeant
U.S. Air Force, Appellant

No. 04-0336

Crim. App. No. 34697

United States Court of Appeals for the Armed Forces

Argued February 25, 2005

Decided September 19, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
EFFRON and BAKER, JJ., joined.  CRAWFORD and ERDMANN, JJ., each
filed a separate opinion concurring in part and dissenting in
part.

Counsel

For Appellant:  Major Andrew S. Williams (argued); Colonel
Carlos L. McDade, Major Terry L. McElyea, and Major James M.
Winner (on brief); Colonel Beverly B. Knott, and Major Antony B.
Kolenc.

For Appellee:  Captain C. Taylor Smith (argued); Lieutenant
Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, and
Major John C. Johnson (on brief); Colonel LeEllen Coacher.

Military Judge:  David F. Brash

**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

INTRODUCTION

Senior Airman (SrA) John Daugherty made a confession that implicated both himself and Appellant in drug offenses.  About five months after confessing, SrA Daugherty spoke to Appellant and Appellant's defense counsel, then signed an affidavit claiming he no longer remembered Appellant's involvement in the offenses.  He testified at Appellant's trial and was subject to cross-examination, but continued to claim a lack of memory. This appeal concerns whether the admission of his confession violated Appellant's confrontation rights or the bar against hearsay evidence.  We hold that Appellant's confrontation rights were satisfied because SrA Daugherty took the stand and was subject to cross-examination.  We also hold that his confession was properly admitted under the hearsay exception for statements against interest.  But we reverse the affected findings and the sentence because the military judge erroneously allowed the Government to suggest that Appellant was at fault for SrA Daugherty's memory loss.[1]

---

[1] We heard oral argument in this case at the University of North Dakota School of Law, Grand Forks, North Dakota, as part of the Court's "Project Outreach."  See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003).

2

BACKGROUND

At his court-martial, Appellant entered mixed pleas. The charges and specifications at issue in this appeal alleged violations of Article 112a of the Uniform Code of Military Justice (UCMJ)[2] by using and possessing psilocyn and introducing it onto a military base. Appellant pleaded not guilty to these offenses.[3] A general court-martial panel found Appellant guilty of the specifications alleging use and possession. The members found Appellant not guilty of the introduction specification. The United States Air Force Court of Criminal Appeals affirmed the court-martial's results in an unpublished opinion.[4] We granted review to determine whether a Government witness's pretrial statement implicating Appellant was properly admitted into evidence and whether uncharged misconduct evidence was erroneously admitted.[5]

As the Air Force Court observed, "This case arose from an investigation of drug abuse at Yokota Air Base, Japan, involving several military members."[6] SrA Daugherty was interrogated by the Air Force Office of Special Investigation (OSI) agent as part of that investigation. He made a five-page handwritten

---

[2] 10 U.S.C. § 912a (2000).
[3] Appellant pleaded guilty to larceny and disorderly conduct.
[4] United States v. Rhodes, No. ACM 34697, 2004 CCA LEXIS 42, 2004 WL 388964 (A.F. Ct. Crim. App. Feb. 24, 2004).
[5] United States v. Rhodes, 60 M.J. 378 (C.A.A.F. 2004)(order granting review).
[6] Rhodes, 2004 CCA LEXIS 42, at *2, 2004 WL 388964, at *1.

3

confession that admitted using illegal drugs, including psilocyn, which is "a hallucinogenic contained in a particular kind of dried mushroom that is a Schedule I controlled substance."[7]  In the confession, SrA Daugherty described buying ten bags of "mushrooms."  He wrote that "[a] guy named Brad was with me."  SrA Daugherty later identified "Brad" as Appellant. The confession stated that "Brad" and his girlfriend took three of the bags, ate about half of one bag, and kept the rest.

SrA Daugherty later testified that the following events occurred four-and-a-half months after his confession.  Appellant approached him in SrA Daugherty's quarters and asked SrA Daugherty to speak with his defense counsel.  SrA Daugherty testified that when he asked why, Appellant replied that he could not tell him.  SrA Daugherty also testified that Appellant neither suggested he should forget what happened nor asked him to lie.  Appellant gave SrA Daugherty the area defense counsel's telephone number.  SrA Daugherty called and spoke to the area defense counsel over the telephone.  SrA Daugherty later went to the defense counsel's office, unaccompanied by Appellant.  At the defense counsel's office, SrA Daugherty signed an affidavit claiming that he no longer remembered the details of the

---

[7] 2004 CCA LEXIS 42, at *3, 2004 WL 388964, at *1.

mushroom purchase. The affidavit specifically stated, "It was likely that Brad never did go with me" to purchase mushrooms. SrA Daugherty testified that no defense counsel stated or implied that he should not tell the truth. SrA Daugherty also testified that he and Appellant never discussed the affidavit after he executed it.

To place the events in their temporal order, we note that Appellant's alleged psilocyn use and possession occurred around December 1999 to January 2000. SrA Daugherty confessed on July 21, 2000. SrA Daugherty's affidavit claiming that he no longer remembered Appellant's involvement in the offenses was dated December 6, 2000. Appellant's court-martial then occurred in late March and early April of 2001.

At trial, the Government filed a motion in limine seeking a ruling on the admissibility of SrA Daugherty's confession. The defense also filed a motion in limine seeking to exclude any evidence suggesting that Appellant "was charged with or otherwise suspected of obstructing justice in regards to . . . SrA John Daugherty."

During a hearing on the motions, both SrA Daugherty and the OSI agent who interrogated him testified. SrA Daugherty stated that he was "sure" he was telling the truth when he confessed, but he claimed to "have forgotten" most of the events that his confession describes. He also testified that he no longer

remembered whether Appellant went with him to purchase the mushrooms. The military judge summarized SrA Daugherty's testimony with the observation that while he remembered some of his own misconduct, he claimed to no longer "remember any drug use or involvement that could be attributable" to Appellant.

When the military judge asked SrA Daugherty what he thought the consequences of his confession would be, his immediate response was "Leavenworth." He later explained that he thought there was a "very good possibility" that he would be confined as a result of his confession.

The military judge made what the Air Force Court aptly called "extensive findings of fact and conclusions of law."[8] He ruled that SrA Daugherty's confession was admissible under Military Rule of Evidence (M.R.E.) 804(b)(3) as a statement against interest, but attached five conditions to the Government's use of the evidence. First, the military judge required that if the Government introduced the statement, it must also introduce SrA Daugherty's affidavit claiming a lack of memory and the possibility that Appellant had not accompanied him when SrA Daugherty purchased mushrooms. Second, the Government was required to introduce the declaration during SrA Daugherty's testimony. Third, the military judge precluded the Government from introducing any statements SrA Daugherty made

---

[8] 2004 CCA LEXIS 42, at *4, 2004 WL 388964, at *2.

during his interrogation other than those in his handwritten confession. Fourth, the military judge gave the defense the discretion to question either SrA Daugherty or the Air Force OSI agent who took his confession about the interrogation. And fifth, if the defense were to introduce any part of the interrogation into evidence, the Government would be permitted to introduce the remainder.

The military judge also denied the defense's motion to preclude evidence suggesting that Appellant had obstructed justice by asking SrA Daugherty to change his testimony. The military judge applied the three-part test established by <u>United States v. Reynolds</u>[9] to determine the evidence's admissibility under M.R.E. 404(b). The military judge first found that there was adequate circumstantial evidence to allow the members to reasonably find that Appellant sought to influence SrA Daugherty's testimony. The military judge also found that any attempt by Appellant to influence SrA Daugherty's testimony was relevant because it exhibited consciousness of guilt concerning the mushroom incident. Finally, the military judge determined that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. This conclusion was based, in part, on the military judge's decision to give a tailored instruction informing the members that an accused has a

---

[9] 29 M.J. 105 (C.M.A. 1989).

right to assist in his own defense and that "there is nothing improper per se in an accused meeting with potential witnesses and arranging meetings for them with his lawyer."

During his opening statement, the trial counsel discussed SrA Daugherty's claimed inability to remember Appellant's involvement in the offenses. The trial counsel told the members that "the accused asked Airman Daugherty to go see his lawyer. You're going to hear that within hours, Airman Daugherty lost his memory." The trial counsel contended that while "Airman Daugherty will tell you that his loss of memory of all these incidents has nothing to do with the visit of the accused[,] [t]he evidence will demonstrate differently. The evidence will prove that the accused encouraged in some fashion Airman Daugherty to forget this evidence." The trial counsel told the members that "[t]his is consciousness of guilt."

SrA Daugherty testified during the Government's case. SrA Daugherty "identified his hand-written confession and testified that he gave the statement under oath."[10] But he testified "that he could no longer remember the incidents in question. Significantly, however, he testified that he was sure the contents of his confession were true at the time he made them."[11] He also stated that his memory would have been better when he

---

[10] Rhodes, 2004 CCA LEXIS 42, at *5-*6, 2004 WL 388964, at *2.
[11] 2004 CCA LEXIS 42, at *6, 2004 WL 388964, at *2.

8

made the statement than it was at trial.[12]  SrA Daugherty "also admitted that he went out socially with the appellant on Christmas Eve, a few weeks after making the affidavit declaring his lack of recall."[13]  The Government also "introduced into evidence SrA Daugherty's written confession and his affidavit professing a lack of memory."[14]  The trial defense counsel then "cross-examined SrA Daugherty at length."[15]  During this cross-examination, the defense counsel "attacked SrA Daugherty's ability to perceive and recall, his prior drug use, his bias, and his motivation for making the statement.  SrA Daugherty continued to assert that he could not remember the details of the events, but that he did not lie in his statement to investigators."[16]

Before counsel made their closing arguments, the military judge instructed the members concerning the "[e]vidence that the accused may have contributed to Senior Airman Daugherty's lack of present memory."  He told the members that this evidence "may be considered by you for the limited purpose of its tendency, if any, to show the accused's awareness of his guilt of the psilocyn allegations."  The military judge then cautioned the members that:

---

[12]  Id.
[13]  Id.
[14]  Id.
[15]  Id.
[16]  Id.

[A]n accused has a right to assist in his own defense. This right includes the ability to assist his counsel in securing evidence and witnesses for use in the defense of the case. An accused may also interview witnesses and request that witnesses meet with the defense counsel. In sum, there is nothing improper per se in an accused meeting with potential witnesses and arranging meetings for them with his lawyer.

If you find that the accused did indeed influence Senior Airman Daugherty, you may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, therefore, committed the offenses charged.

During his closing argument, the trial counsel referred to Appellant's "sham visit" to SrA Daugherty. The trial counsel elaborated:

[T]he accused went on a personal visit here to meet with Airman Daugherty. And, inexplicably within hours of that meeting, within hours of that personal and up close invitation to go see his lawyer, Airman Daugherty's memory goes poof and disappears. Members, I don't know how to state the obvious any more clearly, but this unscrupulously, unusual visit. This preposterous memory loss could not be anymore indicative of the accused's statement, an approach of, "I just wish we could have stuck together better." Airman Daugherty and the accused came to an agreement of some sort, of some fashion; we may never know. But, there's an agreement here somewhere to hang together or, as they say, hang separately. . . . Airman Daugherty, it was very clear, he is lying through his teeth on this alleged memory loss.

As previously noted, the members ultimately found Appellant guilty of the use and possession of psilocyn.

DISCUSSION

A.  Confrontation

The first issue before us is whether the admission of SrA Daugherty's statement violated Appellant's Sixth Amendment right "to be confronted with the witnesses against him."[17]  It did not because SrA Daugherty took the stand, testified, and was subject to cross-examination, thereby satisfying Appellant's confrontation right.

This issue is controlled by the Supreme Court's opinion in United States v. Owens.[18]  In Owens, the Supreme Court held that the Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[19]  The Supreme Court observed that the "opportunity" for cross-examination "is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief."[20]  Rather, "[i]t is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and

---

[17] U.S. Const. amend. VI.
[18] 484 U.S. 554 (1988).
[19] Id. at 559 (alteration in original) (quoting Kentucky v. Stincer, 482 U.S. 730, 739 (1987)).
[20] Id.

11

even (what is often a prime objective of cross-examination) the very fact that he has a bad memory."[21]  The Court reasoned:

> If the ability to inquire into these matters suffices to establish the constitutionally requisite opportunity for cross-examination when a witness testifies as to his current belief, the basis for which he cannot recall, we see no reason why it should not suffice when the witness' past belief is introduced and he is unable to recollect the reason for that past belief.[22]

The Court added that "[t]he weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee.  They are, however, realistic weapons . . . ."[23]

The Supreme Court's later decision in Crawford v. Washington[24] is consistent with the Owens holding.  In Crawford, the Supreme Court reiterated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraint at all on the use of his prior testimonial statements."[25]

The defense seeks to rely on a statement in footnote 9 of the Crawford opinion that the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at

---

[21] Id. (internal citations omitted).
[22] Id.
[23] Id. at 560.
[24] 541 U.S. 36 (2004).
[25] Id. at 59 n.9.

trial to defend or explain it."[26]  Contrary to Appellant's argument, footnote 9 of Crawford did not sub silentio overrule Owens by using the phrase "to defend or explain it."  As Owens makes clear, the declarant's explanation may be that he or she has no recollection of the underlying event, and the defense can meaningfully confront a witness who claims such a lack of memory.

Several courts have held that Justice Scalia's opinion for the Court in Crawford did not overrule Justice Scalia's opinion for the Court in Owens.[27]  We agree.  Because SrA Daugherty testified in this case and was cross-examined by the defense counsel, there was no Confrontation Clause violation.

B.  Statement Against Interest

Having determined that the admission of SrA Daugherty's statement did not violate the Confrontation Clause, we must now determine whether it was properly admitted under the hearsay exception for statements against interest.

It seems counterintuitive that a witness who professes no memory of an event described in an earlier statement is available for confrontation purposes but unavailable for hearsay purposes.  Yet that is the law.  M.R.E. 804 provides certain

---

[26] Id.

[27] See, e.g., People v. Argomaniz-Ramirez, 102 P.3d 1015 (Colo. 2004); Mercer v. United States, 864 A.2d 110, 114 n.4 (D.C. 2004); People v. Sharp, 825 N.E.2d 706 (Ill. App. Ct. 2005).

hearsay exceptions where the declarant is unavailable.  That rule expressly defines "unavailability" to include situations where the declarant "testifies to a lack of memory of the subject matter of the declarant's statement."[28]  So SrA Daugherty was "unavailable" for purposes of M.R.E. 804(b)(3).  That rule permits the admission of a "statement against interest," which includes a statement that "so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true."[29]

As the Air Force Court correctly observed, "The rule 'is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true.'"[30]  But courts must be cautious when considering statements offered under this hearsay exception.  "Only those statements that are truly self-inculpatory are admissible under this rule.  Statements that are not self-inculpatory are not admissible, even if they are included 'within a broader narrative that is generally self-inculpatory.'"[31]  As the United

---

[28] M.R.E. 804(a)(3).
[29] M.R.E. 804(b)(3).
[30] Rhodes, 2004 CCA LEXIS 42, at *9, 2004 WL 388964, at *4 (quoting Williamson v. United States, 512 U.S. 594, 599 (1994)).
[31] 2004 CCA LEXIS 42, at *10, 2004 WL 388964, at *4 (quoting Williamson, 512 U.S. at 600-01).

14

States Court of Appeals for the Seventh Circuit has observed, "Portions of inculpatory statements that pose no risk to the declarants are not particularly reliable; they are just garden variety hearsay."[32]

The Supreme Court has stressed that "whether a statement is self-inculpatory or not can only be determined by viewing it in context."[33]  So the admissibility of a statement against interest must be evaluated "in light of all the surrounding circumstances."[34]

We agree with the Air Force Court's well-reasoned conclusion that under the circumstances of this case, the portions of SrA Daugherty's confession that implicated Appellant were self-inculpatory.  As Justice Scalia noted in his concurring opinion in Williamson, "a declarant's statement is not magically transformed from a statement against penal interest into one that is inadmissible merely because the declarant names another person or implicates a possible codefendant."[35]

The portions of SrA Daugherty's confession in which he admitted buying psilocyn mushrooms, taking them onto base, using them, and providing them to others were clearly self-

---

[32] Carson v. Peters, 42 F.3d 384, 386 (7th Cir. 1994).
[33] Williamson, 512 U.S. at 603.
[34] Id. at 604.
[35] Id. at 606 (Scalia, J., concurring).

15

incriminatory.[36]  SrA Daugherty also implicated himself in the portions of his confession discussing Appellant's misconduct. As the Air Force Court concluded, the confession's "references to 'Brad' (the appellant) and his girlfriend were . . . self-inculpatory" for five reasons.[37]  First, "they would lead investigators to other witnesses to the crimes, necessary for corroboration of the confession."[38]  Second, SrA Daugherty "knew that his friends were under investigation before making the statement, thus he would know that statements admitting his connection with them would link him to their crimes."[39]  Third, "each distribution was potentially a separate offense, so that including 'Brad' as a recipient of the psilocyn mushrooms was directly incriminating to the declarant."[40]  Fourth, "each statement demonstrates that the declarant was guilty as a principal of the use and possession offenses of the others named in the confession."[41]  Finally, "the circumstances do not indicate that the statements were actually self-serving.  The tenor of the statements does not suggest that they were made in an attempt to minimize the declarant's culpability, or to shift

---

[36] Rhodes, 2004 CCA LEXIS 42, at *12-*13, 2004 WL 388964, at *5.
[37] 2004 CCA LEXIS 42, at *13, 2004 WL 388964, at *5.
[38] Id.
[39] Id.
[40] Id.
[41] Id.

16

blame to the appellant or others."[42]  Rather, SrA Daugherty made the statements due to "resignation and remorse."[43]

In Williamson, the Supreme Court emphasized that "[t]he question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'"[44]  We agree with the military judge and the Air Force Court that the portions of SrA Daugherty's confession that implicated Appellant satisfied that test.  The military judge did not abuse his discretion by admitting the confession into evidence.

C.  Uncharged Misconduct

Shortly before SrA Daugherty executed an affidavit claiming to have forgotten Appellant's involvement in the psilocyn mushroom purchase, Appellant had sought him out in his quarters to ask him to speak with his defense counsel.  The final issue in this case is whether the military judge erred by allowing the Government to use this evidence to suggest that Appellant obstructed justice.

The admissibility of uncharged misconduct is governed by the three-part Reynolds test.  That three-part test asks:

    1.  Does the evidence reasonably support a finding by
    the court members that appellant committed prior

---

[42] Id.
[43] 2004 CCA LEXIS 42, at *13-*14, 2004 WL 388964, at *5.
[44] 512 U.S. at 603-04.

crimes, wrongs or acts?
2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?
3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?[45]

If any one of the three parts is not met, the evidence is not admissible.[46] Because we hold that the military judge clearly abused his discretion in applying the third part of the Reynolds test, we need not address the other two.

Writing for the Second Circuit, Judge Friendly has explained why a change in a witness's recollection is, by itself, insufficient to support an inference of wrongdoing by the party who benefited from the change:

> If a witness who once professed testimonial knowledge favorable to the proponent denies this knowledge on the stand, the mind asks what caused the change and recognizes that wrongful pressure from the opponent might be the explanation. Intimidation of the witness would, of course, be independently relevant, and proof of this admissible. But mere failure of a witness to repeat a prior statement helpful to the proponent gives an exceedingly slight basis for drawing the inference. The first statement itself may have been wrong and the oath or the prospect of cross-examination may have led the witness spontaneously to correct it; if the opponent had spoken to the witness, he can as well have been asking information as giving directions; or the witness may simply have forgotten . . . .[47]

As Judge Friendly suggests, in any given case there may be alternative explanations for a witness's memory loss.

---

[45] Reynolds, 29 M.J. at 109 (citations omitted).
[46] United States v. Cousins, 35 M.J. 70, 74 (C.M.A. 1992).
[47] Taylor v. Baltimore & Ohio R.R. Co., 344 F.2d 281, 284 (2d Cir. 1965) (internal citation omitted).

In this case, the evidence's probativeness of misconduct by Appellant is further undermined by SrA Daugherty's testimony that Appellant had nothing to do with his memory loss. On the one hand, the Government's case on the psilocyn specifications rested on SrA Daugherty's confession and his in-court testimony of forgetfulness that was necessary for the confession to be admitted under M.R.E. 804. SrA Daugherty's testimony that he was sure he was telling the truth when he confessed was also highly damaging to the defense. On the other hand, concluding that Appellant was complicit in SrA Daugherty's memory loss would require disbelieving a portion of SrA Daugherty's in-court testimony. Under the peculiar facts of this case, the military judge clearly abused his discretion[48] by concluding that the memory loss's probativeness as evidence of Appellant's consciousness of guilt was not substantially outweighed by the danger of unfair prejudice. It therefore failed the third part of the Reynolds test for the admissibility of uncharged misconduct evidence.

We do not hold that the military judge erred by allowing the Government to present evidence concerning Appellant's meeting with SrA Daugherty the day before SrA Daugherty signed the affidavit claiming memory loss. This evidence provided the members with important background information concerning SrA

---

[48] See United States v. Browning, 54 M.J. 1, 7 (C.A.A.F. 2000).

Daugherty's claimed memory loss. The fact that the meeting took place was an appropriate matter for the members to consider. For example, the meeting might have induced SrA Daugherty to falsely claim loss of memory due to feelings of remorse over betraying a friend. But the military judge erred by admitting the evidence for the improper purpose of demonstrating consciousness of guilt rather than for the proper purpose of evaluating the truthfulness of SrA Daugherty's claim of memory loss.

The military judge compounded this error by instructing the members that they could consider this evidence "for the limited purpose of its tendency, if any, to show the accused's awareness of his guilt of the psilocyn allegations." "When evidence is admitted under Rule 404(b), the [members] must be clearly, simply, and correctly instructed concerning the narrow and limited purpose for which the evidence may be considered."[49] Here, the military judge's instructions allowed the members to consider the evidence for an impermissible purpose.

Having determined that the military judge erred by allowing the Government to use this evidence to suggest Appellant's consciousness of guilt, we must determine whether that error prejudiced Appellant. "Where error is founded on a violation of

_____

[49] United States v. Jobson, 102 F.3d 214, 222 (6th Cir. 1996) (internal quotation marks and citation omitted).

20

Rule 404(b), the test for harmlessness is 'whether we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'"[50]  As we apply this standard, the defense must initially meet the "threshold burden of showing that an error has occurred which is 'of such a character that its natural effect is to prejudice a litigant's substantial rights.'"[51]  The burden then "shifts to the Government to persuade us that the error was harmless."[52]  Because we conclude that the error might have swayed the members concerning the psilocyn use and possession specifications, we must reverse the members' findings as to those specifications.

The "natural effect" of the way the trial counsel used the uncharged misconduct evidence case was certainly prejudicial. The Government used the evidence to suggest Appellant's guilt of the underlying offense and the military judge's instructions expressly allowed the members to use the evidence for that purpose.  Additionally, the Government's case concerning the psilocyn mushroom offenses rested almost solely on SrA Daugherty's pretrial statement.  So the Government's case was

---

[50] United States v. Madden, 38 F.3d 747, 753 (4th Cir. 1994) (quoting United States v. Nyman, 649 F.2d 208, 211–12 (4th Cir. 1980)); see Kotteakos v. United States, 328 U.S. 750, 765 (1946).
[51] United States v. Pollard, 38 M.J. 41, 52 (C.M.A. 1993) (quoting Kotteakos, 328 U.S. at 760).
[52] Id.

certainly not overwhelming. The suggestion that Appellant suborned perjury could have been crucial to the outcome. Finally, the trial counsel extensively used the alleged uncharged misconduct in both opening statement and closing argument. Accordingly, the Government has not carried its burden to persuade us that the erroneous use of this evidence was harmless.

DECISION

The portions of the United States Air Force Court of Criminal Appeals' decision affirming the findings of guilty to the Charge and its specification (use of psilocyn), specification 2 of Additional Charge I (possession of psilocyn), and the sentence are reversed. Those findings and the sentence are set aside. The portions of the Air Force Court of Criminal Appeals' decision affirming the findings of guilty to Additional Charges II and III and their specifications (larceny and disorderly conduct) are affirmed. The record is returned to the Judge Advocate General of the Air Force. A rehearing on the Charge and its specification and specification 2 of Additional Charge I and the sentence is authorized. If a rehearing on these charges and specifications is not practicable, a rehearing on the sentence for the affirmed findings may be held.

CRAWFORD, Judge (concurring in part and dissenting in part):

Although I concur with the majority on Issues I and II, I respectfully dissent on Issue III. While I concur with Judge Erdmann's conclusion that the military judge did not abuse his discretion by admitting the evidence of uncharged misconduct, I write separately to emphasize the important jurisprudential considerations underlying this Court's test in United States v. Reynolds, 29 M.J. 105 (C.M.A. 1989).

## FACTS

The relevant facts in this case are as follows. A key Government witness, Senior Airman (SrA) Daugherty, produced a hand-written statement to Office of Special Investigations (OSI) implicating Appellant with regards to illegal drug use and possession. Four-and-a-half months later, SrA Daugherty was personally approached in his quarters by Appellant. On the following day, it was discovered by Appellant's defense counsel that Daugherty was suffering from memory loss and could no longer attest to the accuracy of his original confession. In a new affidavit prepared by defense counsel, SrA Daugherty recanted, stating: "It was likely that [Appellant] never did go with me" to purchase drugs. In response, the Government sought to introduce evidence that Appellant influenced the witness -- primarily that Appellant met with him just prior to the claimed

memory loss.  Ultimately, the judge admitted this evidence pursuant to Military Rule of Evidence (M.R.E.) 404(b), which is exactly the same as Federal Rule of Evidence (Fed. R. Evid.) 404(b).  The Government argued to the members that Appellant obstructed justice by influencing SrA Daugherty, and that such acts were indicative of Appellant's consciousness of guilt. Appellant was subsequently convicted of drug use and possession. The issue at hand questions the military judge's decision to admit evidence of Appellant's undue influence on the witness.

                              DISCUSSION

When determining admissibility, the military judge correctly applied the test set forth in Reynolds, which requires, in this case, that (1) the evidence reasonably supports a finding that Appellant committed prior crimes, wrongs, or acts, (2) that the evidence increases the likelihood that Appellant is guilty of the drug offenses brought against him, and (3) the probative value of the evidence is not substantially outweighed by unfair prejudice.

Our Reynolds opinion was decided after Huddleston v. United States, 485 U.S. 681 (1988), but interestingly enough, did not directly cite Huddleston.

Huddleston provides that "Rule 404(b) . . . evidence is relevant only if the jury can reasonably conclude that the act

                                 2

occurred and that the defendant was the actor." Id. at 689. This is the first prong of our Reynolds test.

The second prong of Reynolds does not deviate from Huddleston. "The threshold inquiry . . . is whether that evidence is probative of a material issue other than character." Id. at 686. The Court goes on to recognize that Fed. R. Evid. 401 and 402 (like M.R.E. 401 and 402) "establish the broad principle that relevant evidence -- evidence that makes the existence of any fact at issue more or less probable -- is admissible unless the Rules provide otherwise." Id. at 687.

The third prong of Reynolds is likewise discussed in Huddleston. In its discussion of the danger of undue prejudice, the Supreme Court stated, "The House made clear that the version of Rule 404(b) which became law was intended to 'plac[e] greater emphasis on admissibility than did the final Court version.'" Id. at 688. The Court continued:

> The Senate echoed this theme: "[T]he use of the discretionary word 'may' with respect to the admissibility of evidence of crimes, wrongs, or other acts is not intended to confer any arbitrary discretion on the trial judge." S. Rep. No. 93-1277, . . . at 24. Thus, Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence.

Id. at 688-89.

When using the Reynolds test, it is necessary to recognize the difference between the factual relevance prong (Prong I) and the legal relevance prong (Prong III).  While Prong I is meant to determine the sufficiency of the evidence, Prong III is meant to weigh the evidence's potential unfair prejudice.  It is easy to confuse the sufficiency of the evidence (Prong I) with the evidence's probative value (Prong III).  It is therefore necessary to reconsider the Reynolds test in full to lend perspective to the majority opinion.

Beginning with Prong I of the Reynolds test, the meeting between Appellant and SrA Daugherty strongly suggests that Appellant unduly influenced him to recant his original statement.  Soon after their meeting, the witness forgot the details of a hand-written statement, even while he and others were being prosecuted based on the statement's details.  Not only did the witness forget a set of events that were seemingly central and fresh in his mind, but this memory loss was also discovered by defense counsel only a day after Appellant visited SrA Daugherty.  Arguing that such facts are insufficient to support a finding that Appellant influenced SrA Daugherty to recant tests the bounds of coincidence when one considers the details of the events, the timing of the visit, and the subsequent lapse of memory.

4

Nevertheless, the majority has misgivings about the relevance of this evidence. The majority posits an alternate explanation for the memory loss, noting that the meeting might have induced SrA Daugherty to recant "due to feelings of remorse over betraying a friend." United States v. Rhodes, 61 M.J. at ___ (20) (C.A.A.F. 2005). Aside from being unlikely, such alternatives are irrelevant because "the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply . . . decides whether the jury could reasonably find the conditional fact" -- here, that Appellant prompted the witness to claim memory loss. Huddleston, 485 U.S. at 782-83 (emphasis added); see also United States v. Mirandes-Gonzalez, 26 M.J. 411, 413-14 (C.M.A. 1988). Indeed, M.R.E. 104(b) notes that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the military judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Emphasis added. The meeting between Appellant and the witness is a strong circumstantial indication of undue influence, and is clearly relevant under this standard. Weighing the evidence against alternative explanations and counter-evidence is inappropriate because such is the role of the members. Defense counsel's arguments and use of contrary

5

testimony were simply unpersuasive, and it is not the place of this Court to second-guess the members' findings.

Curiously, the majority uses a lengthy quotation from Taylor v. Baltimore & Ohio R.R. Co., 344 F.2d 281 (2d Cir. 1965), to argue that the evidence is too speculative to be admitted. In Taylor, a civil action under the Federal Employer's Liability Act, a witness had originally provided a statement in a way that benefited the plaintiff. At trial five years later, this same witness could not recall his original statement -- a loss in memory that critically damaged the plaintiff's case. In the opinion, Judge Friendly discussed the plaintiff's potential argument that the defendant tampered with the witness:

> [I]f the opponent had spoken to the witness, he can as
> well have been asking information as giving
> directions; or the witness may simply have forgotten -
> - a fair possibility here, when over five years had
> intervened between the accident and the trial. The
> basis for an inference of intimidation is extremely
> weak as against the danger that if the statement is
> admitted, the jury will use it substantively
> regardless of what the judge may say.

Id. at 284. Not only are the facts in Taylor distinguishable from the present case, its holding also conflicts with the majority decision.

First, aside from being a Second Circuit civil case from the 1960s, the facts in Taylor are critically different. In Taylor, the memory loss occurred over a period of five years, a

6

fact omitted by ellipsis from the majority's quote. 61 M.J. at __ (18). Furthermore, Judge Friendly's commentary did not assume the present situation, where a meeting occurs immediately prior to discovering the witness's memory loss. The present case is not diluted by a five-year time span, during which facts could be legitimately forgotten, and an opportunity to influence the witness may not present itself. On the contrary, Appellant approached SrA Daugherty only four-and-a-half months after the original written statement was made, and on the very next day Daugherty recanted, claiming memory loss. The majority's assertion, that "a change in a witness's recollection is, by itself, insufficient," 61 M.J. at __ (18), disregards the highly coincidental nature of the present case -- a scenario that Judge Friendly wisely anticipated by limiting the Taylor decision to its particular facts. Finally, Judge Friendly's opinion deals with a fundamentally different question: whether the witness's original statement should be introduced at all. This Court has no qualms with the introduction of SrA Daugherty's original confession to OSI.

Second, the majority opinion is inconsistent with Taylor. Under its set of facts, the court in Taylor would have found evidence of witness tampering to be completely inadmissible due to the risk of confusing the jury. In contrast, the majority creatively deems such evidence admissible while also condemning

its use in the Government's arguments and the jury instruction. While the meeting was "important background information" that helps explain SrA Daugherty's loss of memory, they would not allow the Government or the jury to consider the notion that Appellant actually caused the recantation. Hence, the majority would admit the same evidence described in Taylor but require that nobody mention its obvious inference, thereby disregarding Judge Friendly's caution that "the jury will use [the evidence] substantively regardless of what the judge may say." Id. at 284. Considering its distinguishing characteristics and apparent misapplication, Taylor sheds but a glimmer of guiding light on the case at hand and only illustrates an extreme instance where no circumstantial evidence existed from which to infer undue witness influence.

In sum, the first prong of the Reynolds test is satisfied because evidence of a highly coincidental meeting between Appellant and SrA Daugherty is relevant, and reasonably supports the finding that Appellant influenced the recantation.

While not actively disputed, the second prong of the Reynolds test requires that the evidence increase the likelihood that Appellant is guilty of the drug offenses brought against him. Here, the evidence indicates that Appellant was aware of his wrongdoings and was attempting to influence a witness to reach a favorable conclusion at trial. Appellant's

consciousness of guilt would make it more likely that he committed the alleged drug offenses, and the second prong is thereby satisfied.

The third prong of the Reynolds test requires that evidence be excluded if it is substantially more prejudicial than probative. See M.R.E. 403. First, the probative value of the meeting between Appellant and the witness is very high given the nature of this case. Generally, evidence of consciousness of guilt is very probative and "second only to a confession in terms of probative value." United States v. Meling, 47 F.3d 1546, 1557 (9th Cir. 1995). In this case, such evidence is critically important to the Government. As the majority notes, "the Government's case concerning the psilocyn mushroom offenses rested almost solely on SrA Daugherty's pretrial statement." 61 M.J. at __ (21). Given the convenient and coincidental nature of the memory loss, evidence suggesting that Appellant spoiled SrA Daugherty's statement is very probative and central to the Government's ability to prove guilt.

Second, the risk of unfair prejudice is slight. To analyze prejudice, this Court must determine to what degree the evidence may mislead, interfere with, or confuse the members in assessing the principal charges. See M.R.E. 403; United States v. Kinman, 25 M.J. 99 (C.M.A. 1987) (applying M.R.E. 403 to introduction of uncharged misconduct evidence). See also Taylor, 344 F.2d at

9

Acts showing consciousness of guilt are unique from other forms of uncharged misconduct in that they almost always directly relate to the charges at hand -- which may explain why it is difficult to articulate any true unfair prejudice in the present case. For example, there is little risk that the members would believe that Appellant used or possessed drugs simply due to a general propensity to obstruct justice. Rather, they would believe that Appellant is guilty of these offenses because influencing SrA Daugherty to recant his original statement is directly indicative of guilt in this particular case. The introduction of this evidence has little collateral or prejudicial effect. Furthermore, any remaining risk of unfair prejudice was tempered by the military judge's limiting instruction, stating that "there is nothing improper per se in an accused meeting with potential witnesses and arranging meetings for them with his lawyer."

In applying the third prong of the Reynolds test, the majority asserts that the prejudicial value of the meeting substantially outweighs its probative value pursuant to M.R.E. 403. M.R.E. 403 is a rule of evidence, not a rule of argument. It speaks to the admissibility of the evidence alone. The majority applies the third prong against the "erroneous use of this evidence" instead of its admission. 61 M.J. at __ (22) (emphasis added). It goes without saying that the use of

damaging evidence will be extremely prejudicial to the defendant's liberty interest, "as is most good prosecution evidence." Reynolds, 29 M.J. at 109. This does not make the evidence itself unfairly prejudicial or inadmissible. In the present case, the meeting between Appellant and SrA Daugherty on the day before his memory loss directly implies that Appellant influenced him. This evidence did not suddenly transform when the Government argued this theory or when the military judge used it in an instruction.

While the meeting made Appellant appear more guilty in the instant case -- as is the purpose of such evidence -- this is not an example of unfair prejudice. The evidence's probative value is not mitigated by the testimony of SrA Daugherty "that Appellant had nothing to do with his memory loss." 61 M.J. at __ (19). The testimony must be weighed against his prior statements and in the context of his conversation with Appellant. SrA Daugherty's testimony is an insufficient basis for a legal conclusion of inadmissibility because the evaluation of this conflicting evidence is left to members. Thus, the third prong of the Reynolds test is more than satisfied, as the probative value of the evidence outweighs any potential prejudice.

I therefore agree that the military judge's application of the Reynolds-Huddleston test was not an abuse of discretion. "A

military judge's ruling on admissibility of evidence . . . will not be overturned on appeal 'absent a clear abuse of discretion.'" United States v. Johnson, 46 M.J. 8, 10 (C.A.A.F. 1997) (quoting United States v. Redmond, 21 M.J. 319, 326 (C.M.A. 1986)). This Court's split on this issue indicates that reasonable minds can disagree on whether to allow such evidence under these circumstances. Even so, simple disagreement is not sufficient to overturn the military judge's decision:

> [A]n abuse of discretion involves far more than a difference in judicial opinion . . . The challenged action must . . . be found to be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous" in order to be invalidated on appeal. If, on the other hand, reasonable [minds] could differ as to its propriety, then it cannot be said that the trial judge abused his discretion.

United States v. Glenn, 473 F.2d 191, 196 (D.C. Cir. 1972) (internal citations omitted). Accord United States v. Travers, 25 M.J. 61, 62-63 (C.M.A. 1987) (citing Glenn, 473 F.2d at 196). This Court has recently stated that an abuse of discretion occurs only when findings of fact are clearly erroneous, when incorrect law is applied, or when the law is applied incorrectly. United States v. Roberts, 59 M.J. 323, 326 (C.A.A.F. 2004). Here, the military judge's decision is not an abuse of discretion because the correct legal test was applied against a set of undisputed facts. The military judge concluded that "the members could reasonably find that the uncharged

12

misconduct occurred" based on the circumstantial evidence, that the evidence increased the probability of Appellant's guilt, that the probative value was high given the coincidental nature of the memory loss, and that any risk of prejudice could be cured by instruction.  While the conclusion drawn by the military judge may differ from that of the majority, this is not a basis for overturning the result.

I would therefore affirm the judgment of the United States Air Force Court of Criminal Appeals.

United States v. Rhodes, 04-0336/AF

ERDMANN, Judge (concurring in part and dissenting in part):

I concur in the resolution of Issues I and II regarding Staff Sergeant Rhodes's Sixth Amendment rights and the admissibility of Senior Airman Daugherty's statement under Military Rule of Evidence (M.R.E.) 804(b)(3). I write separately because I cannot agree that the military judge abused his discretion by admitting evidence of Rhodes's uncharged misconduct.

The majority correctly asserts that evidence of uncharged misconduct must be evaluated using the three-part test set out in United States v. Reynolds, 29 M.J. 105, 109 (C.M.A. 1989):

1.   Does the evidence reasonably support a finding that appellant committed prior crimes, wrongs or acts?

2.   What "fact of consequence" is made more or less probable by the existence of the evidence?

3.   Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice?

Here, there was circumstantial evidence that Rhodes may have played a role in Daugherty's convenient memory loss. At first, Daugherty remembered Rhodes buying and taking drugs. Later, following a personal visit from Rhodes, Daugherty told defense counsel that he could no longer remember whether or not Rhodes had been involved. Presented with this evidence, reasonable members could certainly conclude that Rhodes had influenced Daugherty's forgetfulness.

Next, to the extent that the members believed that Rhodes influenced Daugherty to forget what he had written in his confession to the Office of Special Investigations, that evidence makes it more probable that Rhodes was guilty and was trying to cover up his misdeeds. The majority relies on Taylor v. Baltimore & Ohio R.R. Co., 344 F.2d 281 (2d Cir. 1965), for the proposition that this evidence was too speculative to support an inference of wrongdoing. In Taylor, a witness provided a written statement prior to trial that he had seen a particular accident. At trial, however, he testified that "I heard something, that's all." Id. at 283. The case did not involve a complete memory loss of the event and there was no evidence that a party to the lawsuit met with the witness immediately prior to the memory loss.

Ultimately, the admissibility of evidence concerning Rhodes's visit to Daugherty's barracks room comes down to the balancing test set out in M.R.E. 403 -- is the evidence substantially more prejudicial than probative? The question here is not whether or not this court views the potential prejudice to Rhodes as substantially outweighing the probative value of the evidence. The question is whether the military judge's conclusion that the evidence would not unduly inflame the passions of the members or cloud their judgment was arbitrary, fanciful, clearly unreasonable, clearly untenable or

2

clearly erroneous.  See United States v. Williams, 37 M.J. 352, 356 (C.M.A. 1993); United States v. Travers, 25 M.J. 61, 62 (C.M.A. 1987).

This court has previously held that, "[a] military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law."  United States v. Roberts, 59 M.J. 323, 326 (C.A.A.F. 2004).  There are no findings of fact at issue here and there is no dispute that the military judge used the correct legal test.  It is his application of the law to the facts and his conclusion that the majority questions. But as this court has previously explained, "To reverse for 'an abuse of discretion involves far more than a difference in . . . opinion. . . .'"  Travers, 25 M.J. at 63 (quoting United States v. Yoakum, 8 M.J. 763 (A.C.M.R. 1980), aff'd on other grounds, 9 M.J. 417 (C.M.A. 1980) (internal citation omitted).

As Rhodes presented no evidence that the military judge acted arbitrarily or reached a clearly untenable conclusion, I conclude that the military judge's decision fell within the realm of his considerable discretion.  Accordingly, I would affirm the decision of the United States Air Force Court of Criminal Appeals.